UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHARON WEEMS,

           Plaintiff,      CASE NO.: _____

vs.

DIGITAL RISK, LLC, a Delaware limited
liability company, DIGITAL RISK
MORTGAGE SERVICES, LLC, a Delaware
limited liability company, MPHASIS
CORPORATION, a foreign corporation and
MPHASIS LIMITED, INC., a foreign corporation,

           Defendants.
_____/

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SHARON WEEMS (hereafter "WEEMS"), by and through her counsel, hereby sues Defendants, DIGITAL RISK, LLC, DIGITAL RISK MORTGAGE SERVICES, LLC, MPHASIS CORPORATION and MPHASIS LIMITED (hereafter collectively referred to as "DEFENDANTS"), and alleges as follows:

### Nature of Action

1. This is an action arising from and seeking redress for gender discrimination, national origin discrimination, age discrimination, and retaliation in violation of the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA").

## Jurisdiction and Venue

2. The instant suit is a claim for damages in excess of $75,000.

3. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, as WEEMS and DEFENDANTS are citizens of different states and the matter in controversy exceeds the sum value of $75,000.

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful employment practices were committed within the Middle District of Florida, and because DEFENDANTS conduct business in the Middle District of Florida.

## Parties

5. At all times material hereto, WEEMS resided in Seminole County, Florida.

6. At all times material hereto, DIGITAL RISK, LLC, was a Delaware limited liability company engaging in business in Orange County, Florida.

7. At all times material hereto, DIGITAL RISK MORTGAGE SERVICES, LLC, was a Delaware limited liability company engaging in business in Orange County, Florida.

8. At all times material hereto, MPHASIS CORPORATION was a foreign (Indian) corporation with its principal offices in New York and its mailing address in Maitland, Florida and conducting business in Florida.

9. At all times material hereto, MPHASIS LIMITED, INC., was a foreign (Indian) corporation with its principal offices in India and its mailing address in Maitland, Florida and conducting business in Florida.

10. At all times material hereto, DEFENDANTS were an "employer" as defined by § 760.02(7), Florida Statutes, because it employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the year in which the unlawful employment practices took place and the preceding calendar year.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

11. WEEMS exhausted her administrative remedies under the FCRA by dual-filing Charges of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR) within three hundred sixty-five (365) days of the discriminatory conduct alleged in this action.

12. The FCHR made no determination as to the merits of WEEMS's allegations within the one-hundred eighty (180) day period following the filing of the Charge of Discrimination. As a result, WEEMS has satisfied any and all administrative requirements precedent to the filing of this action and is permitted to proceed to court pursuant to § 760.11, Florida Statutes.

## GENERAL ALLEGATIONS

13.  WEEMS was hired by Digital Risk on approximately March 1, 2010 as a Quality Control Underwriter.  Due to WEEMS exceptional performance, she was subsequently promoted to Manager.

14.  WEEMS excelled in her role and received an annual performance review in 2016 which rated her as "Exceptional," "Excellent" and an "Expert" in proficiency in several categories.

15.  She was also featured in Digital Risk's 'Spotlight," an internal company newsletter, which highlighted her career.  It was noted in the newsletter that she was a company anomaly in that she had only been on one team since the beginning of her tenure with Digital Risk.

16.  From the beginning of WEEMS'S employment, she was on the Transaction Management Team, which had various internal team names, until her transfer to the Encompass Project in 2016.

17.  WEEMS was offered the position of Manager, Audit/Quality Solutions, which was reflected on her business cards.

18.  In addition to this position, WEEMS also participated as a compliance/quality control expert on a project for Citibank ADR/OCR solution. This resulted in a new contract awarded and the Citibank Account Team identified as the

"Most Significant New Logo of the Year," although WEEMS was not identified nor acknowledged as part of that team.

19. On approximately December 7, 2017, WEEMS received a telephone call from Joe Chacko, Sr. VP Global Delivery, advising her that he had selected her to manage the new CapOne Project, which was identified as short term, as are many diligence reviews.

20. Shortly thereafter, WEEMS scheduled an informational meeting with Cory McCormack, Data Specialist, to discuss the scope of the project, which was abruptly cancelled.

21. At the CapOne Project Spirit Kick-Off Information Meeting, WEEMS learned that Joe Phillips had replaced her as the Project Manager.

22. WEEMS was subsequently advised she would manage Quality Control and report directly to the head of the entire project, a younger female, Sadie Gurley.

23. WEEMS was initially assigned to Manager QC for both Data Integrity and Compliance (approximately 82,000 loans). Subsequently, Data Integrity QC was segregated and reassigned, and WEEMS became responsible for UW and Compliance only (approximately 34,000 loans).

24. WEEMS provided compliance review guidance to Phillips while she was on the CapOne Project. This project was primarily compliance reviews.

25. Phillips had extremely limited, if any, experience with TRID completions and reviews. He regularly sought input from WEEMS and other team leaders for compliance review guidance, team training and on-the-floor trouble shooting.

26. From December of 2017 to approximately January 8, 2018, WEEMS worked continuously on the CapOne Project. She performed training for both the staff and QC team and spent countless hours on the floor with the team trouble shooting the data input.

27. Senior Project Managers requested that WEEMS cancel her pre-approved PTO and spend the Christmas and New Year holiday on the floor with the staff. WEEMS was acknowledged as the expert on TRID compliance loans and personally QC'd the initial delivery to validate the accuracy.

28. Due to the staff having little experience, WEEMS was troubled about the high percentage of errors and expressed her concerns with Gurley via e-mail.

29. In her pursuit of high quality and accuracy, WEEMS worked until 2:55 a.m. on the morning of Friday, January 5, 2018, and throughout the weekend to ensure delivery results were correct.

30. On approximately January 8, 2018, WEEMS received a call from Eric Rawlings, Manager, advising her that she would no longer be on the CapOne Project.

On the next day, WEEMS returned to the Encompass Project she had been previously building/managing.

31. WEEMS was asked by Rawlings to review and evaluate client processes based upon her knowledge of the QC/QA process and procedures.

32. Rawlings complimented WEEMS on her work and asked her to participate in a potential client sales presentation by telephone that he would be doing in person.

33. WEEMS performed the research and analysis and provided the expert support to Rawlings during the presentation. When the client requested a follow-up onsite visit, Rawlings sent Jay Hinton, a male colleague who had not been involved in the project nor the concept.

34. Rawlings told WEEMS that she was to introduce Hinton to the project, explain her evaluation to him and prepare him for the onsite visit.

35. On or about February 18, 2018, Chacko met with WEEMS and advised her that the Sales Team was not securing the Encompass Project commitments. He informed her that she would be transferred back to the Transaction Management Team.

36. The transfer to the Transaction Management Team never happened. On March 15, 2018, Rawlings advised WEEMS that since the Encompass Project was

built out, he needed to transition her off his cost center and stated he had nothing else to offer her.

37. He further stated that he did not know about any other positions available in the company. Thus, it was clear that management was actively trying to remove WEEMS from her role because she was an older female.

38. After the Encompass Project was no longer viable, WEEMS was not offered the same "furlough" with pay benefits as the younger, male manager, Phillips.

39. Instead of assigning WEEMS in her transition to another project, as was often done with the younger male employees, she was simply told to contact the Talent & Acquisitions Manager.

40. WEEMS was not being treated as an experienced manager and current employee, but rather as a potential new employee, unlike her younger, male counterparts.

41. WEEMS continued to witness the discriminatory treatment towards women. Additionally, she witnessed the preferential treatment toward the Indian employees versus the American employees. Despite the discriminatory treatment, she was determined to succeed in her role.

42. When WEEMS did contact the Talent & Acquisitions Manager, she was told that there was only one manager position open, and she would not be given the

salary information until she submitted an application and resume for consideration and after she had been selected for an interview.

43. WEEMS later learned that the salary was $15,000 less than her base salary. She was not offered the position or a transfer in an attempt to retain her, but simply provided the information.

44. On March 20, 2018, WEEMS received a call from Leon LaChance, AVP Human Resources, regarding her upcoming employment separation with Digital Risk. WEEMS expressed her concerns that she was being targeted and discriminated against.

45. On March 30, 2018, Rawlings again visited WEEMS at the Lake Mary location unexpectedly. He abruptly announced that her last day would be Friday, April 13, 2018.

46. Rawlings then stated that he had "hoped that after the previous conversation, [she] would have taken the hint to look for a job." Rawlings again told WEEMS that he had nothing to offer her and didn't know if there were any other positions available in the company.

47. Rawlings told her at that time that she was being "laid off" and stated it in full view and earshot of every employee around her cubicle, including her direct report.

48. WEEMS was told that her direct report would continue to service the client under the Encompass Project and that Digital Risk was "not ending the Encompass Project or dropping the client, just [her]."

49. In an attempt to maintain her employment with Digital Risk, WEEMS went to all of the managers she knew at Digital Risk in Lake Mary, Florida, and met with Jim Jajtner, Vice President of Transaction Management, hired in late February of 2018.

50. Jajtner told her a few days later that there were no positions available for her.

51. WEEMS was terminated from her employment with Digital Risk on April 13, 2018.

52. WEEMS learned that Phillips had been offered a position as a Manager with the Transaction Management Team at approximately the same time that she was being laid off.

53. The position of Manager with the Transaction Management Team was being "held" for Phillips. This very position had been promised to WEEMS by Chacko on February 18, 2018.

## COUNT I
## GENDER DISCRIMINATION (FCRA)

54. WEEMS hereby incorporates the allegations set forth in Paragraphs 1, 13 through 53 of the Complaint by reference.

10

55. WEEMS is a female, placing her within a protected category (gender) under the FCRA.

56. WEEMS was, at all times material hereto, qualified to perform and did perform her job duties as a Manager with DEFENDANTS.

57. WEEMS was subjected to discrimination and adverse employment actions when she was discriminated against based on her gender and was terminated from her position as a Manager.

58. DEFENDANTS's unlawful motivation (gender discrimination) was revealed, in part, when DEFENDANTS treated the male employees more favorably than WEEMS.

59. As a direct and proximate cause of DEFENDANT's discriminatory acts, WEEMS has incurred, and will continue to incur, economic damages in the form of lost wages and benefits, and other compensable damages in the form of emotional pain and suffering, inconvenience, embarrassment, humiliation, mental anguish, and loss of enjoyment of life.

60. The unlawful employment practices complained of and the actions of DEFENDANTS and/or its agents were willful, wanton, intentional and committed with malice or with reckless indifference to WEEMS's protected rights, entitling her to damages in the form of punitive damages.

61.   WEEMS has retained counsel to represent her in this matter and has incurred, and will continue to incur, attorneys' fees and costs.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff WEEMS respectfully demands judgment against DEFENDANTS for:

   (a)   back pay;

   (b)   front pay in lieu of reinstatement;

   (c)   compensatory damages;

   (d)   punitive damages;

   (e)   prejudgment interest;

   (f)   attorneys' fees and costs of this action pursuant to Florida Statutes, §760.11; and such other relief as this Court deems just and proper.

## COUNT II
## NATIONAL ORIGIN DISCRIMINATION (FCRA)

62.   WEEMS hereby incorporates the allegations set forth in Paragraphs 1, 13 through 20, 41, and 51 of the Complaint by reference.

63.   WEEMS is an American female, placing her within a protected category (national origin) under the FCRA.

64.   WEEMS was, at all times material hereto, qualified to perform and did perform her job duties as a Manager with DEFENDANTS.

65. WEEMS was subjected to discrimination and adverse employment actions when she was discriminated against based on her national origin and was terminated from her position as a Manager.

66. DEFENDANTS's unlawful motivation (national origin discrimination) is revealed, in part, by the fact that DEFENDANTS treated the Indian employees more favorably than WEEMS and when WEEMS was subjected to comments and discriminatory actions based on her national origin.

67. As a direct and proximate cause of DEFENDANTS's discriminatory acts, WEEMS has incurred, and will continue to incur, economic damages in the form of lost wages and benefits, and other compensable damages in the form of emotional pain and suffering, inconvenience, embarrassment, humiliation, mental anguish, and loss of enjoyment of life.

68. The unlawful employment practices complained of and the actions of DEFENDANTS and/or its agents were willful, wanton, intentional and committed with malice or with reckless indifference to WEEMS's protected rights, entitling her to damages in the form of punitive damages.

69. WEEMS has retained counsel to represent her in this matter and has incurred, and will continue to incur, attorney's fees and costs.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff WEEMS respectfully demands judgment against DEFENDANTS for:

(a) back pay;

(b) front pay in lieu of reinstatement;

(c) compensatory damages;

(d) punitive damages;

(e) prejudgment interest;

(f) attorneys' fees and costs of this action pursuant to <u>Florida Statutes</u>, §760.11; and

such other relief as this Court deems just and proper

## COUNT III
## AGE DISCRIMINATION (FCRA)

70. WEEMS hereby incorporates the allegations set forth in Paragraphs 1, 13 through 53 of the Complaint by reference.

71. WEEMS is 67 years of age, placing her within a protected category (age) under the FCRA.

72. WEEMS was, at all times material hereto, qualified to perform and did perform her job duties with DEFENDANTS.

73. WEEMS was subjected to adverse employment actions when she was discriminated against based on her age and was abruptly terminated from her position.

74. DEFENDANTS's unlawful motivation (age discrimination) was revealed, in part, when DEFENDANTS treated WEEMS less favorably than the younger employees.

75. As a direct and proximate cause of DEFENDANTS's discriminatory acts, WEEMS has incurred, and will continue to incur, economic damages in the form of lost wages and benefits, and other compensable damages in the form of emotional pain and suffering, inconvenience, embarrassment, humiliation, mental anguish, and loss of enjoyment of life.

76. The unlawful employment practices complained of and the actions of DEFENDANTS and/or its agents were willful, wanton, intentional and committed with malice or with reckless indifference to WEEMS's protected rights, entitling her to damages in the form of punitive damages.

77. WEEMS has retained counsel to represent her in this matter and has incurred, and will continue to incur, attorneys' fees and costs.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff WEEMS respectfully demands judgment against Defendant DEFENDANTS for:

  (a) back pay;

  (b) front pay in lieu of reinstatement;

  (c) compensatory damages;

  (d) punitive damages;

  (e) prejudgment interest;

  (f) attorneys' fees and costs of this action pursuant to <u>Florida Statutes</u>, §760.11; and

  (g) such other relief as this Court deems just and proper.

**<u>COUNT IV:</u>**
**<u>RETALIATION</u>**
**(FCRA)**

78. WEEMS incorporates by reference here the allegations set forth in paragraphs 1, 13 through 53 of the Complaint.

79. DEFENDANTS violated the FCRA by retaliating against WEEMS for objecting to the unlawful age, gender, and national origin discrimination to which she was being subjected, with such practices constituting unlawful employment practices.

80. DEFENDANTS subjected WEEMS to adverse employment actions including, but not limited to, terminating her employment.

81. The adverse employment actions suffered by WEEMS were causally related to, and in retaliation for, WEEMS having complained about, and objecting

in good faith to, unlawful age, gender, and national origin discrimination as prohibited by the FCRA.

82. As a direct and proximate cause of DEFENDANTS's acts, WEEMS has incurred, and will continue to incur, economic damages in the form of lost wages and benefits, and other compensable damages in the form of emotional pain and suffering, inconvenience, embarrassment, humiliation, mental anguish, and loss of enjoyment of life.

83. The unlawful employment practices complained of and the actions of DEFENDANTS and/or its agents were willful, wanton, intentional and committed with malice or with reckless indifference to WEEMS'S protected rights, entitling her to damages in the form of punitive damages.

84. WEEMS has retained counsel to represent her in this matter and has incurred, and will continue to incur, attorneys' fees and costs.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff WEEMS respectfully demands judgment against Defendant DEFENDANTS for:

    (a)    back pay;

    (b)    front pay in lieu of reinstatement;

    (c)    compensatory damages;

    (d)    punitive damages;

(e) prejudgment interest;

(f) attorneys' fees and costs of this action pursuant to <u>Florida Statutes</u>, §760.11; and

(g) such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, SHARON WEEMS, hereby demands trial by jury on all issues so triable as a matter of right.

Date:  March 24, 2022

Respectfully submitted,

/s/Lauren R. Robertson
Jill S. Schwartz, Attorney at Law
Florida Bar No. 523021
David H. Spalter, Attorney at Law
Florida Bar No. 966347
Lauren R. Robertson, Esquire
Florida Bar No.:  109236
JILL S. SCHWARTZ & ASSOCIATES, P.A.
655 West Morse Blvd., Ste. 212
Winter Park, Florida 32789
Telephone: (407) 647-8911
Facsimile: (407) 628-4994
E-mail: jschwartz@schwartzlawfirm.net
E-mail: dspalter@schwartzlawfirm.net
E-mail: lrobertson@schwartzlawfirm.net
Secondary E-mail: docketing@schwartzlawfirm.net

Attorneys for Plaintiff

## **VERIFICATION**

Personally appeared before the undersigned, SHARON WEEMS, who being first duly sworn, deposes and says that the allegations of this Verified Complaint and Demand for Jury Trial, consisting of paragraphs 1 through 84, inclusive of Demands for Relief, are true and correct to the best of her knowledge, information and belief.

_____
SHARON WEEMS

STATE OF FLORIDA         )
COUNTY OF Seminole    )

The foregoing instrument was acknowledged before me this __18th__ day of __March__, 2022, by SHARON WEEMS, who is personally known to me or who has produced _____ as identification, and who did take an oath.


Notary Public State of Florida
Julie P Leatherwood
My Commission GG 228891
Expires 06/14/2022

_____
Notary Public
My Commission Expires: 6/14/22